```
IN THE UNITED STATES DISTRICT COURT FOR
     THE SOUTHERN DISTRICT OF GEORGIA
            WAYCROSS DIVISION
```

WILBERT MARTIN,              )
                             )
      Plaintiff,             )
                             )
v.                           )    CASE NO. CV506-116
                             )
HOUSING AUTHORITY OF THE CITY)
OF DOUGLAS,                  )
                             )
      Defendant.             )
                             )

## ORDER

Before the Court is Defendant Housing Authority of the City of Douglas's Motion for Summary Judgment. (Doc. 12.) After careful consideration and for the following reasons, Defendant's Motion is **GRANTED**.

### BACKGROUND

Plaintiff Wilbert Martin, a former employee of the Housing Authority of the City of Douglas ("the Authority" or "Defendant") has brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff alleges discrimination on the basis of race in relation to the Authority's decision to terminate him in July 2006. Plaintiff's Complaint also contains a state law claim for Negligent Retention.[1]

---

[1] Plaintiff's Complaint originally included a claim for age discrimination under the Age Discrimination in Employment

Plaintiff, who is African-American, worked for the Authority as a member of its "make ready" crew. This crew was responsible for a variety of tasks, including plumbing, painting, carpentering, and cleaning. On July 13, 2006, Plaintiff, along with the other two members of the make ready crew, both African-American men, received a notice of separation. He was told the reason for his termination was "cost efficiency." The Authority calculated that it could save $46,698 in operating expenses by eliminating the make ready crew and outsourcing the services it had provided. After his termination, Plaintiff spoke to Annette Anthony, one of the Authority's board members, about being re-hired. He was told that Carolyn Thompson, then the Executive Director of the Authority, refused to consider it.

During his employment at the Authority, Plaintiff overheard members of the Authority's staff make several allegedly racist comments. First, he heard an employee named Tracy Swain state that he was "tired of doing nigger work." Plaintiff did not complain to a superior about Swain's comment. Second, he heard second-hand of a comment

---

Act of 1967, 29 U.S.C. § 621 et seq. Plaintiff admits in his Response to Defendant's Motion for Summary Judgment that the Authority did not have "twenty or more employees" as required by the ADEA and that his ADEA claim is therefore precluded.

made by a Caucasian foreman, Mickey Thomas. An African-American employee had asked Mr. Thomas what Mr. Thomas would think if he started dating Mr. Thomas's sister, and Mr. Thomas stated that he would not want them to come to his house. Finally, Carolyn Thompson made a comment about Plaintiff's work history that he considered to be racist. At his deposition, Plaintiff testified as follows:

> A: I think Ms. Thompson [has a racial prejudice]. Because she indicated to me that I already been here eighteen years like I been here too long.
> Q: Well, have you heard Ms. Thompson say anything you would consider to be racist?
> A: I believe that was.
> Q: That she said that you had been there too long?
> A: She told me just like this, she said you've already been eighteen years.
> Q: And you consider that racist?
> A: Yes, I do.
> Q: Well she didn't actually reference your race though, did she?
> A: She didn't say that. Well, why she – What I'm saying is what is it any of her business how long I've been here if I did my job?

The affidavit of Clara Graham, Executive Director of the Authority, includes an exhibit consisting of "true and accurate copies of the Quarterly Tax and Wage Reports submitted by the Authority to the Georgia Department of Labor" for the quarterly period in which Plaintiff was terminated and for the seven quarters preceding it. The Authority employed fourteen or fewer employees for seven

out of these eight yearly quarters. During the yearly quarter ending in June 2006, it had fifteen employees. Defendant now moves for summary judgment on Plaintiff's federal claims.

**ANALYSIS**

I. **Summary Judgment Standard**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## II. **Employer Status Under Title VII**

As an initial matter, Defendant argues that the Authority did not have enough employees to meet the minimum number required by Title VII. Pursuant to the statute, the term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year . . . ." 42 U.S.C. § 2000e(b). The Supreme Court has explained that the so-called "payroll method," in which an employee "is counted as an employee for each working day after arrival and before departure," should be used in determining the number of employees within a company at a given time. Walters v. Metro. Educ. Enter., Inc., 519 U.S. 202, 211, 117 S. Ct. 660, 136 L. Ed. 2d 644 (1997). The term "current calendar year" refers to the entire year in which the discrimination occurred. See id. at 663 (stating without discussion that, with respect to discrimination occurring in 1990, the current and preceding years were 1990 and 1989).

Defendant, relying upon its Tax and Wage Reports, shows that the Authority had fewer than fifteen employees

during the year 2005. In the year 2006, it had fewer than fifteen employees for the first and third yearly quarters and exactly fifteen during the second. Defendant does not present evidence of the number of employees it had during the final yearly quarter of 2006.

In response, Plaintiff argues that Defendant failed to provide sufficient documentation to show that it did not have fifteen employees for twenty or more weeks. Indeed, because Defendant failed to provide records for the final quarter of 2006, the Court cannot say that there is no issue of material fact, particularly when Defendant would only have needed to employ one additional employee for seven weeks during the undocumented period to qualify as an employer under Title VII. Therefore, Defendant is not entitled to summary judgment on this ground.

### III. Claim of Discrimination Based Upon Race

Defendant's Motion for Summary Judgment must still be **GRANTED**, however, because Plaintiff has failed to establish a prima facie case of discrimination.

A plaintiff's claim of discrimination that is based on indirect evidence of discrimination involves a three-step analysis first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct.

1817, 36 L. Ed. 2d 668 (1973).[1] First, the Plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Id. at 802. Second, if the plaintiff satisfies this requirement, a burden of production shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. Id. Finally, if the defendant satisfies this burden, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reasons are not true, but are mere pretext for discrimination. Id. at 804. "Despite the shifting burdens of proof, the ultimate burden of persuasion remains at all times with the plaintiff." Polote Corp. v. Metric Constructors, Inc., 880 F. Supp. 836, 843 (S.D. Ga. 1995)(Judge Edenfield)(citing Texas Dep. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1980)).

---

[1] "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected class] are direct evidence of discrimination. To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002). In the instant case, a racist comment made by a co-worker with no management responsibility and racially-neutral comments made by a co-worker and a manager do not rise to the level of direct evidence.

7

To establish a prima facie case of discrimination in a case involving termination of employment, a plaintiff must show the following elements: (1) that he belongs to a racial minority; (2) that he was subjected to an adverse employment action; (3) that he was treated less favorably than similarly situated employees who were not members of the minority class; and (4) that he was otherwise qualified for the position. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Defendant, relying upon Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995), urges the Court to apply a modified test often used in cases involving reductions of workforce. Under this modified test, a plaintiff must show the following elements in order to establish a prima facie case: (1) that he is a member of a protected class; (2) that he was terminated; (3) that he was qualified for another position at the time of termination; and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position. Coutu, 47 F.3d at 1073. The parties agree that Plaintiff has established the first two prongs, which are identical for both tests.

Under the circumstances of this case -- that is, termination of three employees from a small work force,

8

purportedly for cost-saving reasons -- Plaintiff could potentially establish an inference of discrimination by satisfying <u>either</u> of the four-part tests presented by the parties. Therefore, in order to establish a prima facie case, Plaintiff must establish either of two possible sets of facts.

First, Plaintiff could establish his prima facie case by showing that (a) he was treated less favorably than similarly situated employees who were not members of the minority class and (b) he was otherwise qualified for the position. <u>See</u> <u>Holifield</u>, 115 F.3d at 1562. With respect to this test, the Court finds that Plaintiff's favorable performance reviews demonstrate that he was qualified for his position with the Authority. However, he has failed to provide sufficient evidence that he was treated less favorably than employees outside the protected class.

Plaintiff's Verified Complaint states that "[o]n information and believe Caucasian persons with less seniority and experience were not terminated or laid off." However, statements based upon information and belief, rather than on personal knowledge, do not constitute evidence sufficient to establish a prima facie case. <u>See</u> <u>Stewart v. Booker T. Washington Ins.</u>, 232 F.3d 844, 851 (11th Cir. 2000)(statement on information and belief was

9

insufficient to establish a prima facie case for claim of failure to rehire). Plaintiff also testified during his deposition that one particular Caucasian employee, who had been at the Authority for only six or seven months as a plumbing truck driver, kept his job when Plaintiff was terminated. However, Plaintiff has made no showing that the retained employee was similarly situated to Plaintiff. Not only did the employee perform an entirely different job than Plaintiff, but Plaintiff has failed to provide evidence regarding the employee's educational background or wages. Accordingly, Plaintiff cannot establish a prima facie case under this test.

Second, Plaintiff could establish a prima facie case of discrimination by showing that (a) he was qualified for another position at the time of termination, and (b) the employer intended to discriminate in failing to consider the plaintiff for another position. See Coutu, 47 F.3d at 1073. With respect to this test, the Court finds that Plaintiff has made no showing that the Authority intended to discriminate on the basis of race in failing to consider him for another position. Without evidence of the racial identities or other qualifications of any replacement contractors, Plaintiff cannot create an inference of discriminatory intent on the part of the Authority.

Therefore, he has failed to establish a prima facie case under this test.

The Court notes that even if Plaintiff had established a prima facie case, summary judgment would still be appropriate. Defendant has provided a reasonable and legitimate explanation for the termination: its desire to cut costs by outsourcing work. Plaintiff has presented no evidence to show that this explanation was mere pretext.

Because the Court finds that Plaintiff has failed to establish a prima facie case of racial discrimination under either of the proposed tests -- and because even if Plaintiff had established a prima facie case, he has made no showing of pretext -- Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's Title VII claim.

## IV. Pendent Jurisdiction

With respect to Plaintiff's state law claim, the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). The Supreme Court has likewise explained that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130,

16 L. Ed. 2d 218 (1966); see also Pijnenburg v. W. Ga. Health Sys., Inc., 255 F.3d 1304, 1308 (11th Cir. 2001). Because Plaintiff's federal claims are precluded, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claim for Negligent Retention.

## CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's federal claims: Causes of Action One and Two, which are **DISMISSED WITH PREJUDICE.** The remaining state law claim, Cause of Action Three, is **DISMISSED WITHOUT PREJUDICE.** The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 14th day of November, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA